UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10214-JCT

| | |
|---|---|
| TOWN OF BEDFORD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| ENERGY EAST SOLUTIONS, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**FIRST AMENDED COMPLAINT**

Pursuant to Fed. Rs. Civ. P. 8 and 15, Plaintiff The Town of Bedford ("Bedford" or "Town") as its First Amended Complaint against Defendant Energy East Solutions, Inc. ("Energy East Solutions" or "EES") avers as follows:

**Nature of Action**

1. This is an action for damages based on Defendant's breach of contract, breach of the implied covenant of good faith and fair dealing and/or the obligation of good faith under M.G.L. c. 106, §1-203 and for enhanced damages under M.G.L. c. 93A arising out of Defendant's unfair and deceptive trade practices. The Town and Defendant, a successor to Northeast Energy Partners, are parties to an agreement (the "Agreement") for the purchase and sale of natural gas under certain terms and conditions. The Agreement was a fixed price agreement with no provision for price renegotiation or adjustment either during its initial term or any subsequent automatic renewal term.

The Agreement expressly provided for its automatic renewal under the same terms and conditions for a second three (3) year term unless thirty (30) days prior to the expiration of the

original term, either party provided notice of non-renewal.  Neither Bedford nor EES provided the other with a notice of non-renewal as required by the Agreement.  Consequently, the Agreement automatically renewed under the same terms and conditions – including the fixed price amount – for another three (3) year period.  After the date of the Agreement's automatic renewal, EES acknowledged its failure to provide timely notice of non-renewal.

Subsequently, however, rather than honoring the Agreement, Defendant attempted to coerce Bedford into accepting a new agreement with a significantly higher indexed price term during the renewal period.  Far from a legitimate or good faith dispute over the interpretation of an ambiguous contract term, Defendant's failure to honor the Agreement's fixed price term and its efforts to coerce Bedford into accepting a higher price term were both contrary to the express language of the Agreement and inconsistent with Defendant's prior admission that it had failed to give timely notice of non-renewal under the Agreement.

Defendant's act of breaching the Agreement and its bad faith conduct constitute unfair and deceptive trade practices in violation of M.G.L. c. 93A.  Defendant acted knowingly and/or willfully for the purpose of attempting to coerce Bedford into doing what it otherwise could not be legally required to do under the Agreement.  As a consequence of Defendant's breaches and unfair and deceptive conduct, Bedford has suffered substantial damages.

## THE PARTIES

2.     Bedford, is a municipality located in Middlesex County, Massachusetts.  Its principal place of business is at Town Hall, 10 Mudge Way, in Bedford, Massachusetts 01730.

3.     Upon information and belief, Defendant is a corporation organized under the laws of the State of Delaware, with its principal place of business at 81 State Street, Stephens Square,

Fifth Floor, in Binghampton, New York 13901.

## FACTS

4.   The Town of Bedford owns a number of public buildings which require a supply of natural gas for purposes of providing heat.

5.   In 2001, The Town contracted with Northeast Energy Partners of Manchester, Connecticut, for sale and purchase of natural gas. The contract consisted of and included a two (2) page document captioned "Natural Sales Agreement (MMA)", a two (2) page attached document captioned "Terms and Conditions (MMA)", and a one (1) page attached document captioned "AES Master Account List" (the "Agreement"). A true and accurate copy of the Agreement is attached as Exhibit 1.

6.   Paragraph 9 of the Agreement provides that Northeast Energy partners could assign the Agreement to a third party with the Town's prior written consent. On or about June 10, 2002, upon written request from EES, the Town consented to the assignment of the Agreement to EES.

7.   In relevant part, the Agreement contains the following terms:

- TERM: "From Buyer's August 2001 meter read date through Buyer's August 2004 meter read date." The phrase "3 year" is circled.

- PRICE: A line next to "Fixed Price" is initialed and the Agreement further states that "[u]nder the fixed price option Buyer will pay Seller a fixed price of $5.65 per Dth (one million British Thermal Units) for natural gas delivered to the Delivery Point and charges related thereto including but not limited to, mandatory capacity assignment and telemarketing."

- RENEWALS (paragraph 7 of the Terms and Conditions): "Unless either party otherwise notifies the other in writing at least thirty (30) days prior to the expiration of the original term or any subsequent agreed upon term, then this Agreement shall be automatically renewed for a like term."

10. The Agreement expressly provided that it would automatically renew unless written notice of non-renewal was provided. No action was required by Bedford to renew the Agreement. The Agreement did not provide any provision for price renegotiation or adjustment either during its initial term or any subsequent renewal term.

11. Neither the Town nor EES provided the other any written notice of intent of non-renewal at least thirty (30) days prior to the August, 2004 meter read dates.

12. Consequently, on or about August 16, 2004, Bedford contacted EES to confirm that the Agreement had entered its renewal period at the existing terms and conditions, including, the fixed price. EES admitted and acknowledged to Bedford that it had not provided a timely notice of non-renewal, but requested Bedford provide a copy of the Agreement to EES. EES informed Bedford that its failure to provide timely notice of non-renewal was a "huge mistake" and that it would have to investigate whether there existed other "liabilities" in connection with other contracts.

13. Subsequently, however, on or about August 20, 2004, Stephen J. Humes, an attorney representing EES and then-associated with the firm LeBoeuf, Lamb, Greene & MacRae, LLP, wrote to Richard T. Reed, Bedford's Town Administrator, purporting to give notice that EES was "willing to renew the Agreement for another three year term, but that the price for the Agreement has changed." This purported notice was untimely and not in conformance with the Agreement because it was not provided to Bedford "at least thirty (30) days of the original term" of the Agreement. It also was contrary to EES's admission and acknowledgment only days earlier that EES had failed to provide timely notice. Finally, the purported notice from EES's

counsel was contrary to the express terms of the Agreement because the Agreement automatically renewed absent written notice of *non-renewal*. The Agreement did not contain any provision for providing notice of renewal.

14. The new price offered by EES was an "Index Price" at $3.11 per Dth above the Monthly NYMEX Average Price, which was defined in the contract as the last NYMEX settlement price for each month as published in the Wall Street Journal during the immediately preceding month. In immediate terms, the new price represented a change from $5.65 per Dth to $8.90 per Dth, which would have cost the Town of Bedford approximately $77,000 per year and approximately $231,000 over three years.

15. In the same August 20, 2004 letter, Mr. Humes further claimed that "the Town of Bedford has elected not to renew the Agreement for the above-described Index Price offering" and that the service to the Town would be terminated as of the September 2004 meter read date unless EES received written confirmation of the renewed Agreement with the new price by September 1, 2004. This allegation was inaccurate because the Agreement did not permit Defendant to renegotiate the price term after automatic renewal. The allegation was also misleading because Bedford had no obligation to respond to Defendant's unilateral attempt to alter the terms of the Agreement.

16. In an August 24, 2004 letter from Town Counsel, Michael C. Lehane to Mr. Humes, the Town of Bedford reiterated its position that EES's failure to provide timely notice of its intent not to renew the Agreement resulted in renewal of the Agreement and that EES would be breaching the contract by refusing to continue service except at an indexed price.

17. The August 24, 2004 letter further stated: "Pursuant to the provisions of c. 93A of

the Massachusetts General Laws, a demand is made on behalf of the Town of Bedford that your client, Energy East Solutions, Inc., agreed to renew the said Agreement on the price basis set forth therein for a three year renewal term commencing on the meter read date in August, 2004 and expiring on the meter read date in August, 2007. This undertaking should immediately be reduced to writing by your client and sent to the Bedford Town Administrator, Richard T. Reed at the address specified in the Agreement."

18. EES responded to Bedford's 93A demand letter in a September 2, 2004 letter from Mr. Humes stating that "[s]ince your letter of August 24, 2004 serves as the writing that formally rejects EES's renewal offer, and since the Agreement has therefore ended, EES intends to notify Keyspan (the local distribution company providing natural gas service to the Town of Bedford) on or before September 12, 2004 that the Town of Bedford meters are being returned to Keyspan for sales service pursuant to utility tariff rates (or whatever alternative service the Town of Bedford selects)."

19. EES terminated natural gas service to the Town of Bedford on or about September 4, 2004.

## Count I
### (Breach of Contract)

20. Plaintiff repeats and realleges the allegations in paragraphs 1 through 20 herein.

21. The Agreement constitutes a valid and enforceable contract between the Town and EES. Plaintiff has complied with its obligations under the Agreement.

22. EES has breached the Agreement by refusing to honor the fixed price for an additional three years after failing to first provide the required written notice of non-renewal at

least thirty (30) days in advance of the August, 2004 meter read dates.

23.     As a direct and proximate result of EES's breach of the Agreement, Bedford has suffered substantial damages, including, but not limited to, the additional cost of obtaining gas at a price significantly greater than the Agreement's fixed price, attorneys' fees and costs incurred in connection with enforcing its rights under the Agreement.

## Count II
### (Breach of the implied covenant of good faith and fair dealing/Violation of M.G.L. c. 106, §1-203)

24.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 23 herein.

25.     EES owed Bedford a duty of good faith and fair dealing under the Agreement as a matter of common law and/or M.G.L. c. 106 ("UCC"). EES had a duty not to engage in conduct which would have the result of destroying or injuring Bedford's rights under the Agreement, including, but not limited to, Bedford's right to renewal of the Agreement at the fixed price.

26.     EES breached its common law and/or UCC-imposed duty of good faith in connection with its effort to coerce Bedford to renegotiate the price term of the Agreement after EES had failed to provide proper and timely notice of non-renewal of the Agreement. Rather than complying with its obligations under the Agreement, Defendant intentionally misstated the scope of its discretion under the Agreement in an effort to unilaterally alter the price term and to recapture the opportunity it had lost to not renew the Agreement for another term at the fixed price. Also, in an effort to justify its imminent breach of the Agreement, Defendant intentionally misstated that Bedford had elected not to renew the Agreement despite its prior automatic renewal and Defendant's acknowledgment of that occurrence.

27.     EES's breaches have proximately caused Bedford substantial damages, including,

but not limited to, the additional cost of obtaining gas at a price significantly greater than the Agreement's fixed price, attorneys' fees and costs incurred in connection with enforcing its rights under the Agreement.

## Count III
### (Violation of M.G.L. c. 93A)

28. Plaintiff repeats and realleges the allegations in paragraphs 1 through 27 herein.

29. EES is engaged in a trade or commerce.

30. EES's conduct in refusing to honor the terms of the Agreement does not involve a good faith dispute. Rather, EES acted in disregard of known contractual arrangements and attempted to secure benefits for itself by coercing Bedford to forego its rights to the fixed price under the Agreement for the renewal period. Such coercion included its actions in knowingly and/or willfully mischaracterizing the terms of the Agreement and the course of dealings between the parties in an attempt to mislead Bedford into waiving or foregoing its contractual rights. EES, in the course of its business relationship with Bedford, has engaged in unfair and deceptive acts and practices, in violation of M.G.L. c. 93A §§2 and 11 by refusing to honor the terms of the Agreement.

31. EES's unfair and deceptive conduct has been knowing and/or willful.

32. EES's unfair and deceptive conduct occurred primarily and substantially in Massachusetts.

33. As a direct and proximate result of EES's unfair and deceptive conduct, Bedford has suffered substantial damages, including, but not limited to, the additional cost of obtaining gas at a price significantly greater than the Agreement's fixed price, attorneys' fees and costs

incurred in connection with enforcing its rights under the Agreement.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

1. As to Counts I and II, an award of money damages in the amount equal to the damages suffered by the Town of Beford as a result of Defendant's conduct, plus its attorneys' fees and costs;

2. As to Count III, multiple damages in an amount double or treble the actual damages awarded to Plaintiff, plus its attorneys' fees and costs; and

3. Such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

THE TOWN OF BEDFORD,

By its attorneys,

MURPHY, HESSE, TOOMEY & LEHANE, LLP


　/s/ Michael F.X. Dolan, Jr.
Michael F.X. Dolan, Jr., BBO# 565876
mdolan@mhtl.com
Thomas W. Colomb, BBO# # 638211
tcolomb@mhtl.com
300 Crown Colony Drive, Ste. 410
Quincy, MA 02169
617.479.5000

Certificate of Service

I certify that the foregoing was served *via* facsimile (860-293-3555) and first-class mail, postage prepaid on this 18th day of March, 2005 on James J. Reardon, Jr., Esquire and Thomas G. Rohback, LeBoeuf, Lamb, Greene & MacRae, LLP, Goodwin Square, 225 Asylum Street - 13 Floor, Hartford, CT 06103.

　/s/ Michael F.X. Dolan, Jr.

EXHIBIT 1 — ALL-STATE LEGAL®

## NATURAL GAS SALES AGREEMENT (MMA)

| | | | |
|---|---|---|---|
| **SELLER:** | NORTHEAST ENERGY PARTNERS | **BUYER:** | Town of Bedford |
| | One Heritage Place | | 10 Mudge Way |
| | Manchester, CT 06040 | **ATTN:** | Bedford, MA 01730 |
| **PHONE:** | 860-647-1841 | **PHONE:** | Richard Read |
| **FAX:** | 860-647-1847 | | 781-275-1111 |
| | | **FAX:** | 781-275-6310 |

**LOCATION(S):** See Attached

**LDC ACCOUNT NUMBER(S):** See Attached

**TERM:** From Buyer's August, 2001 meter read date through Buyer's August 2004 meter read date.

(Circle Choice)

1 Year    2 Year    (3 Year)

**SERVICE:** The sale and purchase of natural gas hereunder shall be on a guaranteed, firm delivery basis. Buyer agrees to continue using natural gas as its energy source for all the uses and processes reflected in the historical usage information provided to Seller, and to purchase its full gas requirements from Seller pursuant to this Natural Gas Sales Agreement and the attached Terms and Conditions (together the "Agreement"). This shall not prohibit Buyer from implementing measures, including maintenance practices and equipment upgrades, designed to improve the efficiency with which it consumes natural gas, so long as Buyer provides Seller with reasonable notice of the implementation date and likely effect of such measures on Buyer's consumption. Seller agrees to supply Buyer's full requirements for natural gas pursuant to the terms and conditions of this Agreement.

**DELIVERY POINT(S):** The point(s) where the Local Distribution Company (LDC) receives gas from the applicable pipeline.

**PRICE:** Initial the appropriate pricing option below.

A. _RR_ Fixed Price:
(initials)

Under the Fixed Price option Buyer will pay Seller a fixed price of $7.65 per Dth (one million British Thermal Units) for natural gas delivered to the Delivery Point and charges related thereto including, but not limited to, mandatory capacity assignment and telemetering.

B. _____ Indexed Price:
(initials)

Under the Indexed Price option for all natural gas for the Term delivered by Seller to the Delivery Point, and sold to Buyer, Buyer will pay Seller $_____ per dth above the Monthly NYMEX Average. Monthly NYMEX Average shall be the last NYMEX settlement price for such month as published in the Wall Street Journal during the immediately preceding month.

**SPECIAL TERMS AND CONDITIONS:** Seller will indemnify Buyer for any charges, penalty costs, or standby cost related to the nominating, balancing, scheduling, and delivery of natural gas to the delivery point, including the cost of providing gas to the Buyer in the event that Seller cannot provide delivery to the Buyer except in the case of Force Majeure.

During the Term, Seller may not, at any time, unless it has Buyer's express written consent to do so, switch Buyer's accounts onto the LDC's service.

**BUYER:**
AGREED TO AND ACCEPTED

**SELLER:**
AGREED TO AND ACCEPTED

2

BY: *[signature] Andrew P. Reed* DATE: 9/20/01   BY: *[signature]* DATE: 12/20/04
Its: Town Administrator                             Its: Mg Partner

## TERMS AND CONDITIONS (MMA)

1. **QUALITY:** All natural gas delivered hereunder shall meet the quality and heat content requirements of the applicable transporting pipeline.
2. **TRANSPORTATION:** This Agreement is contingent upon execution of all intrastate and interstate transportation agreements required to complete this transaction. Seller and/or its gas supplier(s) shall be responsible for arranging the transportation to the Delivery Point(s) and Buyer shall be responsible for arranging the transportation or handling thereafter. Seller shall be responsible for executing an agent authorization letter with Buyer to assist Buyer in arranging transportation to the delivery point if required by the delivering LDC.
3. **MEASUREMENT:** Natural gas sold and delivered hereunder shall be measured at the Delivery Point(s) in accordance with the procedures established by the receiving LDC.
4. **BILLING & PAYMENT:** Buyer shall be billed monthly by Seller for natural gas supplied in accordance with this Agreement at the Price indicated above. Buyer shall pay each invoice within twenty (20) days of the date on which Buyer receives such invoice unless Buyer is a Municipality in which case Buyer shall pay each invoice within fifty-five (55) days of the date on which Buyer receives such invoice. Municipality shall mean any city, town, school district, regional school district, water district or fire district that is organized under the laws of the Commonwealth of Massachusetts. Buyer may withhold any disputed amounts until such dispute is resolved. Interest on unpaid invoices will accrue from the due date and must be paid at a rate of 1.5% per month; provided however no such late payment charge shall be due on disputed amounts if Buyer disputes all or a portion of the amounts in a written statement received by Seller within twenty (15) business days of Buyer's receipt of the subject invoice. In the case of any such dispute, Buyer shall pay the undisputed portion in a timely fashion and shall at the same time pay the disputed portion into an interest-bearing escrow account. Within fifteen (15) business days of receiving written notice of the disputed amount, Seller shall respond to such notice by either rectifying the amount in dispute or clarifying such invoice to Buyer. If Buyer is not satisfied with Seller's resolution, Buyer and Seller agree to submit the dispute to expedited arbitration in accordance with the Commercial Rules of the American Arbitration Association. Interest on the escrowed funds shall be distributed to Seller or to Buyer in proportion to the allocation of the disputed funds upon the ultimate resolution of such dispute. If the dispute is submitted to arbitration, the prevailing party shall be entitled to its costs. If the arbitrator's decision does not result in a final award, the parties shall divide the costs equally. Under no circumstances shall Seller bill Buyer for any unbilled consumption which consumption occurred more than ninety (90) days earlier than the date of the invoice. If Buyer does not make payments on undisputed portions of its bill within the time period provided for in this paragraph, Seller may assign its rights to collect payment under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement, no situation or state of affairs, including any action or inaction by either Party, arising from or relating to any failure of the LDC to provide accurate information to either Party may constitute or give rise to a default by Buyer.
5. **TAXES AND ROYALTIES:** Seller shall pay or cause to be paid all royalties and other sums relating to the production and transportation of natural gas to the Delivery Point(s); provided however, that any increase in applicable taxes or transportation fees relating to the production and transportation of natural gas to the Delivery Point(s) occurring after the commencement of service hereunder will be paid by Buyer and reflected in the Price which shall be adjusted accordingly. Buyer shall be responsible for any costs, fees, and taxes of any kind which are levied upon or attributable to the gas purchased and sold hereunder after title has passed from Seller to Buyer, including but not limited to the utility shrinkage, franchise fees, lost and unaccounted for charges, utility users' tax, tariffed intrastate transportation charges and surcharges of every kind and nature. Any increase in applicable taxes will be paid by Buyer and reflected in the delivered price as adjusted. Buyer shall be responsible for sales, usage, and any other related taxes.
6. **TITLE:** Seller hereby warrants good title exists for the gas delivered to the Delivery Point(s) hereunder. The title to such gas shall pass to Buyer at the Delivery Point(s).
7. **FORCE MAJEURE:** In the event that either Party is rendered unable, wholly or in part, to perform its obligations (other than payment or financial obligations) under the Natural Gas Sales Agreement and the incorporated Terms and Conditions due to events not reasonably anticipated or within the control of either Party, such as, but not limited to, acts of God, government regulations, changes in law or LDC actions, both Parties agree that such non-performance shall be excused. In the event Seller is unable to deliver gas at any time during the term of this Agreement for reasons of Force Majeure Buyer shall be temporarily released to purchase such deficient quantities from Buyer's Local Distribution Company ("LDC").
8. **RENEWALS:** Unless either party otherwise notifies the other in writing at least thirty (30) days prior to the expiration of the original term or any subsequently agreed upon term, then this Agreement shall be automatically renewed for a like term.
9. **TERMINATION:** A Party may terminate this Agreement under the following conditions: (i) Any assignment for the benefit of the creditors, or any bankruptcy, reorganization, or other proceeding under any bankruptcy or insolvency law is initiated by the other Party; (ii) Failure of the other Party to materially comply with any provisions of Massachusetts laws or regulations regarding the retail marketing of natural gas, as amended, or applicable orders and regulations thereunder, regarding retail Natural Gas sales and usage; (iii) A change in the applicable laws and/or regulations which

3

4

result in an increase in the Buyer's price beyond the price offered by the LDC; (iv) A material breach by the other Party of any of the terms of this Agreement which breach is not remedied within thirty (30) days of the breaching Party's receipt of written notice of such breach.

9. ASSIGNMENT: Buyer may assign this Agreement to a third party with Seller's prior written consent. Seller may assign this Agreement to a third party with Buyer's prior written consent or to an affiliate without Buyer's consent, if the affiliate has substantially similar financial and technical capabilities to perform Seller's obligations under this agreement. Any required consents shall not be unreasonably withheld by either party.

10. GOVERNING LAW: This Agreement shall be construed according to the laws of the Commonwealth of Massachusetts and any disputes, which arise, shall be submitted to a state or federal court where the Buyer is located except as provided for in Paragraph 4 of these Terms and Conditions to the Agreement.

11. CONFIDENTIALITY: Each shall keep the terms and conditions of the Agreement confidential except as may be required in order to effectuate the transportation and delivery of gas to be sold hereunder or to meet the lawful requirement of any regulatory body having jurisdiction, or the provisions of the Massachusetts Public Records Laws M.G.L. ch. 4, §7 and ch. 66, §10, and Laws 1997 ch. 164. Notwithstanding the previous sentence, Buyer authorizes Seller to provide AES NewEnergy with Buyer's natural gas usage data.

4

AES Master Account List

| Customer | Distributor | Account | Meter Num |
|---|---|---|---|
| Town of Bedford | Boston Gas | 4301104851010 | |
| Town of Bedford | Boston Gas | 4301108801010 | |
| Town of Bedford | Boston Gas | 4301108819010 | |
| Town of Bedford | Boston Gas | 4301108827010 | |
| Town of Bedford | Boston Gas | 4301108835010 | |
| Town of Bedford | Boston Gas | 4301108892010 | |
| Town of Bedford | Boston Gas | 4301110039010 | |
| Town of Bedford | Boston Gas | 4301113397010 | |
| Town of Bedford | Boston Gas | 4301114156010 | |
| Town of Bedford | Boston Gas | 4301114197010 | |
| Town of Bedford | Boston Gas | 4301118305010 | |
| Town of Bedford | Boston Gas | 4301122539010 | |
| Town of Bedford | Boston Gas | 4301163202012 | |
| Town of Bedford | Boston Gas | 4301171833010 | |
| Town of Bedford | Boston Gas | 4301180925010 | |
| Town of Bedford | Boston Gas | 4301197903010 | |
| Town of Bedford | Boston Gas | 4301116143010 | |
| Town of Bedford | Boston Gas | 4301177343010 | |

Town of Bedford

6/26/01

5