UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TOWN OF BEDFORD,
        Plaintiff,

v.

ENERGY EAST SOLUTIONS, INC.,
        Defendant.

DOCKET NO. 05-10214-JCT

**PLAINTIFF TOWN OF BEDFORD'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

In 2001, Plaintiff Town of Bedford ("Bedford" or the "Town") and the predecessor of Energy East Solutions, Inc., entered into a three-year contract for the sale of natural gas.[1] Under the parties' contract, Defendant was the exclusive provider of natural gas to Bedford. In exchange, Bedford negotiated a fixed rate for purchase of the natural gas. The contract – a form template created by the Defendant – contained an automatic renewal clause. In short, if neither party gave thirty days written notice of its intent not to renew, the contract would automatically renew for three years. Despite the plain language of the contract, Defendant attempted to thwart its obligations under the contract – and specifically under the automatic renewal provision – by suggesting that the fixed rate did not survive the automatic renewal of the contract. In other words, Defendant sought to have its cake and eat it, too: to bind Bedford to its prior exclusive provider commitment and contemporaneously to inflate unilaterally the price of the natural gas. After learning that Bedford would not accede to its extra-contractual demands, Defendant

---

[1] The original contract was between Town of Bedford and Northeast Energy Partners. Energy East Solutions, Inc. succeeded Northeast Energy Partners and thus, among other things, assumed the contract with Town of Bedford. For purposes of this Motion, Bedford refers to Northeast Energy Partners and Energy East Solutions, Inc. both collectively and individually as "Defendant."

breached the parties' contract by ceasing the supply of natural gas to Bedford. Due to Defendant's breach, Bedford was forced to secure a new supplier at short notice and at a much higher price. Defendant has breached the parties' contract; there is no dispute of fact; and summary judgment should be granted to the Town of Bedford.

## FACTUAL BACKGROUND

In 2001, Bedford and Defendant entered into a contract for the sale of natural gas. A true and accurate copy of the contract, titled "Natural Gas Sales Agreement" (including the attached "Terms and Conditions") and hereinafter referred to as the "Agreement", is attached as *Exhibit ("Ex.") 1* to the Concise Statement of Material Facts submitted herewith. The Agreement was finalized from a template created by Defendant. *Id.* In fact, the only changes to the template created by Defendant were additions to indicate the parties, term, and price. *Id.* The Agreement was for a fixed price over three years,[2] and specified that Bedford was to purchase all of its natural gas needs from Defendant. *Id.* The Agreement also provided for automatic renewal for a like term if neither party gave appropriate notice of its intent not to renew. *Id.* Specifically, the Agreement read:

> RENEWALS: Unless either party otherwise notifies the other in writing at least thirty (30) days prior to the expiration of the original term or any subsequently agreed upon term, then this Agreement shall be automatically renewed for a like term.

*Id.,* Terms and Conditions, § 7.

The original term of the Agreement expired in August, 2004. *Id.* Neither party indicated its intent not to renew the Agreement within the timeframe contemplated by the renewal

---

[2] The three year term of the original contract is described as "[f]rom Buyer's August 2001 meter read date through Buyer's August 2004 meter read date." *Ex. 1.* The *Affidavit of Marcia Pyles ("Pyles Aff.")* is submitted herewith and attaches and authenticates Keyspan Energy Delivery Documents reflecting meter read dates for August 2001 and August 2004 for the Town of Bedford. *Pyles Aff.* at ¶ 4.

provision. *Pyles Aff.* at ¶ 5. In fact, it was not until mid-August, 2004, that either party discussed the renewal term. *Id.* at ¶¶ 6, 7. On or about August 16, 2004, Bedford called Defendant to discuss their continued business relationship. *Id.* at ¶ 6. During that discussion, Defendant confirmed that the Agreement had renewed according to its terms, but proclaimed to Bedford that it had made a "huge mistake" in forgetting to express its intent not to renew.[3] *Id.* at ¶¶ 8, 9.

Thereafter, on or about August 20, 2004, Bedford received a letter from Defendant's attorney, purportedly to negotiate a new price term for the renewed contract. A true and accurate copy of the August 20, 2004, letter from Defendant's counsel to Bedford's Town Administrator is attached as *Ex. 2* to the Concise Statement of Material Facts submitted herewith. The letter contained an ultimatum: if Bedford did not agree to the price term contained in the letter within twelve days, Defendant would terminate Bedford's gas supply.[4] *Id.* Bedford replied through its attorney, noting that Defendant's proposal was unacceptable, and stating in part:

> Th[e] Agreement was a fixed-price agreement with no provision for price renegotiation or adjustment either during its initial term or the renewal term. Under the provisions of that Agreement it automatically self-renewed, unless thirty (30) days prior to the expiration of the term notice on non-renewal was given by one party or the other. In fact, as you doubtless know, no such notice was given, and indeed your client has acknowledged to Bedford that [Defendant] had made a "huge mistake" by failing to give that notice.
>
> I consider it clear beyond dispute that the failure by your client to give timely notice of an intent not to renew the Agreement results in renewal of contract at the fixed price specified in the Agreement. It contains no provisions for renegotiation of the price or conversion of the pricing to an indexed or variable cost.

---

[3] Defendant may try to refute the fact or content of this conversation in an effort to create a dispute of material fact and thus avoid summary judgment. Bedford therefore does not rely on this conversation to support its motion and suggests to the Court that it is not material to the outcome of this case.

[4] The letter, dated August 20, 2004, demands that Bedford respond by September 1, 2004, or else Defendant will terminate Bedford's natural gas supply as of the September meter read date. *Ex. 2.*

3

A true and accurate copy of the August 24, 2004, letter from Bedford's counsel to Defendant's counsel is attached as *Ex. 3* to the Concise Statement of Material Facts submitted herewith.[5] Defendant stopped its service of natural gas to Bedford in September, 2004. *Pyles Aff.* at ¶ 10; *Exs. 2, 4*.

As a result of Defendant's breach of contract, Bedford had to find an alternative supplier of natural gas under short notice and ultimately entered into a contract with Select Energy. *Pyles Aff.* at ¶ 11; *Affidavit of Richard Reed ("Reed Aff.")* submitted herewith at ¶ 3. Whereas it used to pay a fixed rate of $5.65 per Dth for gas under the Agreement, Bedford paid $8.91 per Dth for gas pursuant to a one year contract with Select Energy through October, 2005. *Reed Aff.* at ¶¶ 4, 5. Due to the extreme escalation and fluctuation of current gas prices, Bedford is currently receiving price quotes for gas on a month to month basis. *Id.* at 7. For November, 2005, Bedford is paying $17.48 per Dth for gas from Select Energy. *Id.* At the end of the last fiscal year, Bedford had lost more than $50,000.00 due to Defendant's actions. *Id.* at ¶ 6. Projecting Bedford's current monthly rate – $17.48 per Dth – over the next two years, the Town's total estimated damages would exceed $430,000.00. *Id.* at ¶ 8. And if the gas rates continue to rise, the Town's total estimated damages would continue to rise in tandem.[6]

## ARGUMENT

*I.    Standard of Review.*

Summary judgment is appropriate where, as here, there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

[5] Defendant, through its counsel, replied to Mr. Lehane on September 2, 2004, *via* a four page letter with detailed legal citations, and informed him that it intended to stop service. A true and accurate copy of the September 2, 2004, letter from Defendant's counsel to Bedford's counsel is attached as *Ex. 4* to the Concise Statement of Material Facts submitted herewith.

[6] Since Bedford's current gas rate varies on a month to month basis, its damages can only be estimated. At the Court's direction, Bedford can provide additional information regarding its monetary damages.

P. 56(c); *Polaroid Corp. v. Rollins Environmental Services (N.J.), Inc.*, 416 Mass. 684, 696 (1993). Fed. R. Civ. P. 56(a). When a motion for summary judgment is filed, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Here, there are no issues of material fact in dispute. The existence of a valid and binding contract between the parties cannot be disputed, and the parties' present conflict can be resolved by a reading of the plain language of the Agreement. Accordingly, this case is ripe for summary judgment.

The issues presented to the Court by means of this motion concern matters of unambiguous contract interpretation and, as such, are appropriate for summary judgment. "Under Massachusetts law, interpretation of a contract is ordinarily a question of law for the court." *S. Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir. 1981); *Baybank Middlesex v. 1200 Beacon Properties, Inc.*, 760 F. Supp. 957, 963 (D. Mass. 1991); *Seaco Insurance Co. v. Barbosa*, 435 Mass. 772, 779 (2002) ("If a contract [ ]is unambiguous, its interpretation is a question of law that is appropriate for a judge to decide on summary judgment"). "It is only where the contract contains ambiguities that a question of fact for the jury is presented." *S. Edmonds*, 642 F.2d at 881. And "[t]he determination of whether the terms of a contract are ambiguous is a question of law." *Baybank Middlesex*, 760 F. Supp. at 963. As discussed in detail below, the parties' Agreement is unambiguous and should be enforced according to its terms (*i.e.*, to renew for three years for identical terms). Accordingly, summary judgment as to Count I should enter in favor of the Town of Bedford.

**II.     *Defendant East Energy Solutions, Inc. Breached Its Contract with Bedford When It Stopped Supplying Natural Gas Under the Terms of the Agreement Despite the Agreement's Automatic Renewal.***

In this case, there is no dispute that the parties entered into a valid and binding contract for the sale of natural gas. A valid contract involves offer and acceptance, mutuality of intent, consideration, and lack of ambiguity with regard to the major terms. *See generally* Alperin and Shubow, *Massachusetts Practice, Summary of Basic Law*, § 7.1 *et seq.* (3d ed. West Publishing Co. 1996); *see also Quinn v. State Ethics Comm'n*, 410 Mass. 210, 216 (1987). Moreover, a contract must state the essential terms by which the parties intend to be bound, with sufficient definiteness and clarity that a court, by interpretation with the aid of existing and contemplated circumstances, may enforce it. *George W. Wilcox, Inc. v. Shell Eastern Petroleum Products*, 283 Mass. 383, 388 (1933). Here, the Agreement contained all the essential terms (*e.g.*, parties, item sold, price, term, service, delivery point, renewal). The Agreement was signed by both parties. The Agreement was supported by consideration – Bedford received natural gas, Defendant was compensated for the gas. Both parties indicated their mutuality of intent and satisfaction by their respective performance under the contract.

"It is a fundamental principle of law that contracts in writing voluntarily executed with full knowledge of their contents by rational beings acting on their own judgment must be enforced." *Colonial Development Corp. v. Bragdon*, 219 Mass. 170, 174 (1914). Moreover, "contracts freely made by intelligent persons cannot be abrogated simply because they are unwise." *Id.* As discussed in detail below, a plain reading of the Agreement reveals that the contract was to renew with identical terms (including price) should neither party give appropriate notice of nonrenewal. Accordingly, Defendant breached the Agreement when it stopped supplying natural gas under the Agreement despite its automatic renewal.

   A.   ***The Agreement Is Not Ambiguous, and It Should Be Enforced As Written.***

Unless a contract is ambiguous, it must be enforced according to its plain language. *See, e.g., Citation Insurance Co. v. Gomez,* 426 Mass. 379, 381 (1998) ("If there is no ambiguity [in a contract], we construe the words of [a contract] in their usual and ordinary sense") (internal citations omitted); *Schwanbeck v. Federal-Mogul Corp.*, 412 Mass. 703, 706 (1992) ("an unambiguous agreement must be enforced according to its terms"); *S. Edmonds*, 642 F.2d at 881 (under Massachusetts law, "where the wording of the contract is unambiguous, the contract must be enforced according to its terms"). A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one. *Citation Insurance Co,* 426 Mass. at 381. "[A]n ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Id.* (internal citations omitted).

Here, the renewal provision states that, unless either party provides timely written notice of nonrenewal, "this Agreement shall be automatically renewed for a like term."[7] In other words, the plain language of the Agreement reveals that the intent of the renewal clause was to renew the entire Agreement for a like term. Neither the renewal clause, nor any other section of the Agreement, contemplates changes to terms of the Agreement in the event of automatic renewal. Rather, the renewal clause refers to "this Agreement" – the whole and inclusive contract – when it provides a mechanism for automatic renewal. Both parties agreed to the inclusion of the renewal clause in the Agreement, and both parties stood to benefit from the clause *(i.e.,* Defendant would remain the exclusive supplier, Bedford would keep the price term). Moreover, to suggest that the renewal clause did anything but renew the entire contract would

---

[7] With respect to the term "Agreement," the parties' contract provides as follows: "Buyer agrees to continue using natural gas as an energy source for all the uses and processes reflected in the historical usage information provided to Seller, and to purchase its full gas requirements from Seller pursuant to the Natural Gas Sales Agreement and the attached Terms and Conditions (together the "Agreement").

yield a nonsensical result – binding Bedford to an exclusive provider relationship without knowledge of the price term, an arrangement contrary to industry norms and to which no sensible business person would agree. Rather, the only fair meaning that could be assigned to the renewal clause was that the fully bargained Agreement would renew for a new term – *i.e.*, that both parties would benefit from their respective bargains for a new term, not just the Defendant.

The renewal clause specified that "[*u*]*nless* either party otherwise *notifies* the other *in writing* at least *thirty (30) days prior to the expiration of the original term* or any subsequent agreed upon term, then this Agreement *shall be automatically renewed* for a like term." (emphasis added). At no point prior to the expiration of the original term did any party notify the other of its intention not to renew the contract. Accordingly, the Agreement automatically renewed for another three-year term in or about August, 2004. When Defendant ceased supplying natural gas in or about September, 2004, it breached the Agreement.

> B.  *Even Assuming Arguendo that the Agreement Is Ambiguous, the Automatic Renewal Provision Should Be Enforced Since the Agreement Was Drafted by Defendant.*

As discussed above, there is no need to look further than the plain, unambiguous language of the contract to enforce it according to its terms and grant summary judgment in favor of Bedford. However, even assuming *arguendo* that the Court finds ambiguity in the Agreement, the renewal provision should be enforced as suggested by Bedford because Defendant drafted the Agreement and, in particular, the renewal clause.

It is a maxim of contract interpretation that ambiguities in the contract should be construed against the drafter. *See, e.g., LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.*, 739 F.2d 4, 7 (1st Cir. 1984) ("even if we were to agree that the phrase [in the contract] is completely ambiguous, so that neither possible meaning was more likely to have been intended

than the other, a fundamental principle would control: an ambiguous contract should be construed against the drafting party"); *Massachusetts Insurers Insolvency Fund v. Continental Casualty Co.*, 399 Mass. 598, 600 (1987); *Merrimack Valley National Bank v. Baird*, 372 Mass. 721, 724 (1977); *Massachusetts Turnpike Auth. v. Perini Corp.*, 349 Mass. 448, 454 (1965). "The author of the ambiguous term is held to any reasonable interpretation attributed to that term which is relied on by the other party." *Merrimack Valley National Bank*, 372 Mass. at 724.

Here, the Agreement was finalized from a template created by Defendant. The Defendant's template contained the renewal clause. In fact, the only changes to the template created by Defendant were additions to indicate the parties, term, and price. Moreover, the interpretation of the renewal clause advanced by the Town of Bedford – that the Agreement renewed for another three years with identical terms – is reasonable and plainly consistent with the language of the Agreement (*i.e.*, "this Agreement shall be automatically renewed for a like term"). Conversely, Defendant's proposed interpretation of the renewal provision would yield the nonsensical result of binding Bedford to an exclusive provider relationship without knowledge of the price term. No sensible business person would agree to such an arrangement. Accordingly, the renewal provision must be construed against the Defendant and interpreted and enforced as creating a new contract identical in its terms to the initial Agreement.

### III.    *Town of Bedford Suffered Financial Injury as a Direct Result of Defendant East Energy Solutions, Inc.'s Breach of Contract.*

As a result of Defendant's breach of contract, Bedford had to find an alternative supplier of natural gas under short notice. Under a new one year contract with a new supplier, Bedford paid $8.91 per Dth for gas through October, 2005, as compared to its fixed rate of $5.65 per Dth for gas under the Agreement with Defendant. Due to the extreme escalation and fluctuation of current gas prices, Bedford is now receiving price quotes for gas on a month to month basis.

```
```
Projecting Bedford's current monthly rate – $17.48 per Dth – over the next two years, the Town's total estimated damages would exceed $430,000.00. *Id.* at ¶ 8. And if the gas rates continue to rise, the Town's total estimated damages would continue to rise as well.

## CONCLUSION

For the reasons stated herein, Plaintiff Town of Bedford respectfully requests that its motion for partial summary judgment be allowed.

Respectfully submitted,

TOWN OF BEDFORD

By its attorneys,

MURPHY, HESSE, TOOMEY & LEHANE, LLP

_____/s/Michael F.X. Dolan, Jr._____
Michael F.X. Dolan, Jr. BBO# 565876
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive
Quincy, MA  02169
(617) 479-5000


Projecting Bedford's current monthly rate – $17.48 per Dth – over the next two years, the Town's total estimated damages would exceed $430,000.00. *Id.* at ¶ 8. And if the gas rates continue to rise, the Town's total estimated damages would continue to rise as well.

## CONCLUSION

For the reasons stated herein, Plaintiff Town of Bedford respectfully requests that its motion for partial summary judgment be allowed.

Respectfully submitted,

TOWN OF BEDFORD

By its attorneys,

MURPHY, HESSE, TOOMEY & LEHANE, LLP


_____/s/Michael F.X. Dolan, Jr._____
Michael F.X. Dolan, Jr. BBO# 565876
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive
Quincy, MA  02169
(617) 479-5000