## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF BEDFORD,<br>        Plaintiff,<br><br>v.<br><br>ENERGY EAST SOLUTIONS, INC.,<br>        Defendant. | DOCKET NO. 05-10214-JCT |

## PLAINTIFF TOWN OF BEDFORD'S CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiff Town of Bedford submits the following concise statement of material facts:

1.      In 2001, Plaintiff Town of Bedford ("Bedford" or the "Town") and the predecessor of Energy East Solutions, Inc., Northeast Energy Partners, entered into a three-year contract for the sale of natural gas. Northeast Energy Partners and Energy East Solutions are referred to herein both collectively and individually as "Defendant." A true and accurate copy of the contract, titled "Natural Gas Sales Agreement" (including the attached "Terms and Conditions") and hereinafter referred to as the "Agreement", is attached hereto as *Exhibit ("Ex.") 1*.

2.      The Agreement was finalized from a template created by Defendant. *Id.* The only changes to the template created by Defendant were additions to indicate the parties, term, and price. *Id.*

3.      The Agreement was for a fixed price over three years, and specified that Bedford was to purchase all of its natural gas needs from Defendant. *Id.*

4.      The Agreement described the three year term as follows: "[f]rom Buyer's August 2001 meter read date through Buyer's August 2004 meter read date." *Id.*

5.      Bedford's historical documentation of its natural gas delivery reflects meter read dates in August 2001 and August 2004. *See Affidavit of Marcia Pyles ("Pyles Aff.") at ¶ 4*, submitted herewith, which attaches and authenticates Keyspan Energy Delivery Documents reflecting meter read dates for August 2001 and August 2004 for the Town of Bedford.

6.      The Agreement provided for automatic renewal for a like term if neither party gave appropriate notice of its intent not to renew. *Ex. 1.* Specifically, the Agreement read:

> RENEWALS:  Unless either party otherwise notifies the other in writing at least thirty (30) days prior to the expiration of the original term or any subsequently agreed upon term, then this Agreement shall be automatically renewed for a like term.

*Id.,* Terms and Conditions, § 7.

7.      The original term of the Agreement expired in August, 2004. *Id.*

8.      Neither party indicated its intent not to renew the Agreement within the timeframe contemplated by the renewal provision. *Pyles Aff.* at ¶ 5.

9.      On or about August 16, 2004, Bedford called Defendant to discuss their continued business relationship. *Id.* at ¶ 6.

10.      It was not until that discussion that either party discussed the renewal term. *Id.* at ¶ 7.

11.      During that discussion, Defendant confirmed that the Agreement had renewed according to its terms, but proclaimed to Bedford that it had made a "huge mistake" in forgetting to express its intent not to renew.[1] *Id.* at ¶¶ 8, 9.

---

[1] Defendant may try to refute the fact or content of this conversation in an effort to create a dispute of material fact and thus avoid summary judgment.  Bedford therefore does not rely on this conversation to support its motion and suggests to the Court that it is not material to the outcome of this case.

12.     On or about August 20, 2004, Bedford received a letter from Defendant's attorney, purportedly to negotiate a new price term for the renewed contract. A true and accurate copy of the August 20, 2004, letter from Defendant's counsel to Bedford's Town Administrator is attached hereto as *Ex. 2*.

13.     Among other things, the August 20, 2004, letter demands that Bedford respond by September 1, 2004, or else Defendant will terminate Bedford's natural gas supply as of the September meter read date. *Id.*

14.     The letter informed Bedford that if it did not agree to the price term contained in the letter within twelve days, Defendant would terminate Bedford's gas supply. *Id.*

15.     On or about August 24, 2004, Bedford replied through its attorney, noting that Defendant's proposal was unacceptable, and stating in part:

> Th[e] Agreement was a fixed-price agreement with no provision for price renegotiation or adjustment either during its initial term or the renewal term. Under the provisions of that Agreement it automatically self-renewed, unless thirty (30) days prior to the expiration of the term notice on non-renewal was given by one party or the other. In fact, as you doubtless know, no such notice was given, and indeed your client has acknowledged to Bedford that [Defendant] had made a "huge mistake" by failing to give that notice.
>
> I consider it clear beyond dispute that the failure by your client to give timely notice of an intent not to renew the Agreement results in renewal of contract at the fixed price specified in the Agreement. It contains no provisions for renegotiation of the price or conversion of the pricing to an indexed or variable cost.

A true and accurate copy of the August 24, 2004, letter from Bedford's counsel to Defendant's counsel is attached hereto as *Ex. 3*.

16.     Defendant, through its counsel, replied to Mr. Lehane on September 2, 2004, and informed him that it intended to stop service. A true and accurate copy of the September 2, 2004, letter from Defendant's counsel to Bedford's counsel is attached hereto as *Ex. 4*.

17.     Defendant stopped its service of natural gas to Bedford in September, 2004. *Pyles Aff.* at ¶ 10.

18.     As a result of Defendant's breach of contract, Bedford had to find an alternative supplier of natural gas under short notice. *Id.* at ¶ 11.

19.     Whereas it used to pay a fixed rate of $5.65 per Dth for gas under the Agreement, Bedford paid $8.91 per Dth for gas pursuant to a one year contract with Select Energy through October, 2005. *See Affidavit of Richard Reed ("Reed Aff.")* submitted herewith at ¶¶ 4, 5. Due to the extreme escalation and fluctuation of current gas prices, Bedford is currently receiving price quotes for gas on a month to month basis. *Id.* at ¶ 7. For November, 2005, Bedford is paying $17.48 per Dth for gas from Select Energy. *Id.*

20.     As of the end of the last fiscal year, Bedford had lost more than $50,000.00 due to Defendant's actions. *Id.* at ¶ 6. Projecting Bedford's current monthly rate – $17.48 per Dth – over the next two years, the Town's total estimated damages would exceed $430,000.00. *Id.* at ¶ 8 And if the gas rates continue to rise, the Town's total estimated damages would continue to rise in tandem.

Respectfully submitted,

TOWN OF BEDFORD

By its attorneys,

MURPHY, HESSE, TOOMEY & LEHANE, LLP


_____/s/ Michael F.X. Dolan, Jr._____
Michael F.X. Dolan, Jr. BBO# 565876
Murphy, Hesse, Toomey & Lehane, LLP
300 Crown Colony Drive
Quincy, MA  02169
(617) 479-5000