## NATURAL GAS SALES AGREEMENT (MMA)

| | | | |
|---|---|---|---|
| **SELLER:** | NORTHEAST ENERGY PARTNERS | **BUYER:** | Town of Bedford |
| | One Heritage Place | | 10 Mudge Way |
| | Manchester, CT 06040 | **ATTN:** | Bedford, MA 01730 |
| **PHONE:** | 860-647-1841 | | Richard Reed |
| **FAX:** | 860-647-1847 | **PHONE:** | 781-275-1111 |
| | | **FAX:** | 781-275-8310 |

**LOCATION(S):** See Attached

**LDC ACCOUNT NUMBER(S):** See Attached

**TERM:** From Buyer's August, 2001 meter read date through Buyer's August 2004 meter read date.

(Circle Choice)

1 Year    2 Year    (3 Year)

**SERVICE:** The sale and purchase of natural gas hereunder shall be on a guaranteed, firm delivery basis. Buyer agrees to continue using natural gas as its energy source for all the uses and processes reflected in the historical usage information provided to Seller, and to purchase its full gas requirements from Seller pursuant to this Natural Gas Sales Agreement and the attached Terms and Conditions (together the "Agreement"). This shall not prohibit Buyer from implementing measures, including maintenance practices and equipment upgrades, designed to improve the efficiency with which it consumes natural gas, so long as Buyer provides Seller with reasonable notice of the implementation date and likely effect of such measures on Buyer's consumption. Seller agrees to supply Buyer's full requirements for natural gas pursuant to the terms and conditions of this Agreement.

**DELIVERY POINT(S):** The point(s) where the Local Distribution Company (LDC) receives gas from the applicable pipeline.

**PRICE:** Initial the appropriate pricing option below.

A. _____ Fixed Price:
   (initials)

   Under the Fixed Price option Buyer will pay Seller a fixed price of $4.85 per Dth (one million British Thermal Units) for natural gas delivered to the Delivery Point and charges related thereto including, but not limited to, mandatory capacity assignment and telemetering.

B. _____ Indexed Price:
   (initials)

   Under the Indexed Price option for all natural gas for the Term delivered by Seller to the Delivery Point, and sold to Buyer, Buyer will pay Seller $_____ per dth above the Monthly NYMEX Average. Monthly NYMEX Average shall be the last NYMEX settlement price for such month as published in the Wall Street Journal during the immediately preceding month.

**SPECIAL TERMS AND CONDITIONS:** Seller will indemnify Buyer for any charges, penalty costs, or sundry cost related to the nominating, balancing, scheduling, and delivery of natural gas to the delivery point, including the cost of providing gas to the Buyer in the event that Seller cannot provide delivery to the Buyer except in the case of Force Majeure.

During the Term, Seller may not, at any time, unless it has Buyer's express written consent to do so, switch Buyer's accounts onto the LDC's service.

**BUYER:**
AGREED TO AND ACCEPTED

**SELLER:**
AGREED TO AND ACCEPTED

2

EXHIBIT
1

BY: [signature] DATE: 9/20/01
Its: Town Administrator

BY: [signature] DATE: 12/20/d
Its: [illegible]

2

3

## TERMS AND CONDITIONS (MMA)

1. **QUALITY:** All natural gas delivered hereunder shall meet the quality and heat content requirements of the applicable transporting pipeline.
2. **TRANSPORTATION:** This Agreement is contingent upon execution of all intrastate and interstate transportation agreements required to complete this transaction. Seller and/or its gas supplier(s) shall be responsible for arranging the transportation to the Delivery Point(s) and Buyer shall be responsible for arranging the transportation or hubbing thereafter. Seller shall be responsible for executing an agent authorization letter with Buyer to assist Buyer in arranging transportation to the delivery point if required by the delivering LDC.
3. **MEASUREMENT:** Natural gas sold and delivered hereunder shall be measured at the Delivery Point(s) in accordance with the procedures established by the receiving LDC.
4. **BILLING & PAYMENT:** Buyer shall be billed monthly by Seller for natural gas supplied in accordance with this Agreement at the Price indicated above. Buyer shall pay each invoice within twenty (20) days of the date on which Buyer receives such invoice, unless Buyer is a Municipality in which case Buyer shall pay each invoice within fifty-five (55) days of the date on which Buyer receives such invoice. Municipality shall mean any city, town, school district, regional school district, water district or fire district that is organized under the laws of the Commonwealth of Massachusetts. Buyer may withhold any disputed amounts until such dispute is resolved. Interest on unpaid invoices will accrue from the due date and must be paid at a rate of 1.5% per month; provided however no such late payment charge shall be due on disputed amounts if Buyer disputes all or a portion of the amounts in a written statement received by Seller within twenty (15) business days of Buyer's receipt of the subject invoice. In the case of any such dispute, Buyer shall pay the undisputed portion in a timely fashion and shall at the same time pay the disputed portion into an interest-bearing escrow account. Within fifteen (15) business days of receiving written notice of the disputed amount, Seller shall respond to such notice by either rectifying the amount in dispute or clarifying such invoice to Buyer. If Buyer is not satisfied with Seller's resolution, Buyer and Seller agree to submit the dispute to expedited arbitration in accordance with the Commercial Rules of the American Arbitration Association. Interest on the escrowed funds shall be distributed to Seller or to Buyer in proportion to the allocation of the disputed funds upon the ultimate resolution of such dispute. If the dispute is submitted to arbitration, the prevailing party shall be entitled to its costs. If the arbitrator's decision does not result in a final award, the parties shall divide the costs equally. Under no circumstances shall Seller bill Buyer for any unbilled consumption which consumption occurred more than ninety (90) days earlier than the date of the invoice. If Buyer does not make payment on undisputed portions of its bill within the time period provided for in this paragraph, Seller may assign its rights to collect payment under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement, no situation or state of affairs, including any action or inaction by either Party, arising from or relating to any failure of the LDC to provide accurate information to either Party may constitute or give rise to a default by Buyer.
4. **TAXES AND ROYALTIES:** Seller shall pay or cause to be paid all royalties and other sums relating to the production and transportation of natural gas to the Delivery Point(s); provided however, that any increase in applicable taxes or transportation fees relating to the production and transportation of natural gas to the Delivery Point(s) occurring after the commencement of service hereunder will be paid by Buyer and reflected in the Price which shall be adjusted accordingly. Buyer shall be responsible for any costs, fees, and taxes of any kind which are levied upon or attributable to the gas purchased and sold hereunder after title has passed from Seller to Buyer, including but not limited to the utility shrinkage, franchise fees, lost and unaccounted for charges, utility users' tax, tariffed intrastate transportation charges and surcharges of every kind and nature. Any increase in applicable taxes will be paid by Buyer and reflected in the delivered price as adjusted. Buyer shall be responsible for sales, usage, and any other related taxes.
5. **TITLE:** Seller hereby warrants good title exists for the gas delivered to the Delivery Point(s) hereunder. The title to such gas shall pass to Buyer at the Delivery Point(s).
6. **FORCE MAJEURE:** In the event that either Party is rendered unable, wholly or in part, to perform its obligations (other than payment or financial obligations) under the Natural Gas Sales Agreement and the incorporated Terms and Conditions due to events not reasonably anticipated or within the control of either Party, such as, but not limited to, acts of God, government regulations, changes in law or LDC actions, both Parties agree that such non-performance shall be excused. In the event Seller is unable to deliver gas at any time during the term of this Agreement for reasons of Force Majeure Buyer shall be temporarily released to purchase such deficient quantities from Buyer's Local Distribution Company ("LDC").
7. **RENEWALS:** Unless either party otherwise notifies the other in writing at least thirty (30) days prior to the expiration of the original term or any subsequently agreed upon term, then this Agreement shall be automatically renewed for a like term.
8. **TERMINATION:** A Party may terminate this Agreement under the following conditions: (i) Any assignment for the benefit of the creditors, or any bankruptcy, reorganization, or other proceeding under any bankruptcy or insolvency law is instituted by the other Party; (ii) Failure of the other Party to materially comply with any provisions of Massachusetts laws or regulations regarding the retail marketing of natural gas, as amended, or applicable orders and regulations thereunder, regarding retail Natural Gas sales and usage; (iii) A change in the applicable laws and/or regulations which

result in an increase in the Buyer's price beyond the price offered by the LDC; (iv) A material breach by the other Party of any of the terms of this Agreement which breach is not remedied within thirty (30) days of the breaching Party's receipt of written notice of such breach.

9. ASSIGNMENT: Buyer may assign this Agreement to a third party with Seller's prior written consent. Seller may assign this Agreement to a third party with Buyer's prior written consent or to an affiliate without Buyer's consent, if the affiliate has substantially similar financial and technical capabilities to perform Seller's obligations under this agreement. Any required consents shall not be unreasonably withheld by either party.

10. GOVERNING LAW: This Agreement shall be construed according to the laws of the Commonwealth of Massachusetts and any disputes, which arise, shall be submitted to a state or federal court where the Buyer is located except as provided for in Paragraph 4 of these Terms and Conditions to the Agreement.

11. CONFIDENTIALITY: Each shall keep the terms and conditions of the Agreement confidential except as may be required in order to effectuate the transportation and delivery of gas to be sold hereunder or to meet the lawful requirement of any regulatory body having jurisdiction, or the provisions of the Massachusetts Public Records Laws M.G.L. ch. 4, §7 and ch. 66, §10, and Laws 1997 ch. 164. Notwithstanding the previous sentence, Buyer authorizes Seller to provide ABS NewEnergy with Buyer's natural gas usage data.

4

# LeBoeuf, Lamb, Greene & MacRae
### L.L.P.
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

NEW YORK
WASHINGTON, D.C.
ALBANY
BOSTON
HARRISBURG
HARTFORD
HOUSTON
JACKSONVILLE
LOS ANGELES
NEWARK
PITTSBURGH
SALT LAKE CITY
SAN FRANCISCO

Goodwin Square
225 Asylum Street, 13th Floor
Hartford, CT 06103
(860) 293-3500
Facsimile: (860) 293-3555

E-MAIL ADDRESS: STEPHEN.HUMES@LLGM.COM
WRITER'S DIRECT DIAL: (860) 293-3744
WRITER'S DIRECT FACSIMILE: (860) 241-1344

LONDON
(A LONDON-BASED MULTINATIONAL PARTNERSHIP)
PARIS
BRUSSELS
JOHANNESBURG
(PTY) LTD.
MOSCOW
RIYADH
(AFFILIATED OFFICE)
BISHKEK
ALMATY
BEIJING

August 20, 2004

VIA FACSIMILE AND CERTIFIED MAIL

Town of Bedford
10 Marion Way
Bedford, MA 01730
Attn: Richard Reed, Town Administrator

Re: Natural Gas Sales Agreement (MMA) with Energy East Solutions, Inc.

Dear Mr. Reed:

Please be advised that this law firm represents Energy East Solutions, Inc. ("EES") in connection with the above-referenced Natural Gas Sales Agreement (MMA) (the "Agreement"). We have been asked to inform the Town of Bedford that the above-referenced contract, which is dated September 20, 2001 and has a term of three years, is about to expire. This letter is the requisite notice that EES is willing to renew the Agreement for another three year term, but that the price for the Agreement has changed.

As your account representative has previously informed the Town of Bedford, the new price EES is offering you in order to renew the Agreement for another three years is $3.11 per DTH above the Monthly NYMEX Average price ("Index Price"). Monthly NYMEX Average shall be the last NYMEX settlement price for each month as published in the Wall Street Journal during the immediately preceding month.

Our client has informed us that the Town of Bedford has elected not to renew the Agreement for the above-described Index Price offering. This letter, therefore, is notice to the Town of Bedford that, unless the Town of Bedford sends a written confirmation by facsimile or regular mail to (203) 368-0045 by September 1, 2004 of its acceptance of a renewed Agreement at the Index Price, then EES will terminate service to the Town of Bedford accounts effective as



Mr. Richard Reed, Town Administrator
August 20, 2004

Page 2

of the September, 2004 meter read date and EES will be so notifying KeySpan, the local distribution company, that the Town of Bedford meters are being terminated. Natural gas service from EES will therefore continue through the September, 2004 meter read date, but will terminate on the meter read date for each account.

    If you have any further questions or would like to discuss this matter further, please contact me or have your legal representative contact me directly. If you prefer, you can contact Jan Geist at EES directly at (203) 382-9553.

Sincerely,

Stephen J. Humes

CC:    Jan Geist, Energy East Solutions, Inc.
        Richard Jones, Town of Bedford Department of Public Facilities

**MURPHY, HESSE, TOOMEY & LEHANE, LLP**
**Attorneys At Law**

CROWN COLONY PLAZA
300 CROWN COLONY DRIVE, SUITE 410
P.O. BOX 9126
QUINCY, MA 02269-9126
TEL: (617) 479-5000   FAX: (617) 479-6469

WORLD TRADE CENTER EAST
TWO SEAPORT LANE
BOSTON, MA 02210
TEL: (617) 479-5000   FAX: (617) 338-1324

ONE MONARCH PLACE, SUITE 1310R
SPRINGFIELD, MA 01144
TEL: (800) 227-6485   FAX: (617) 479-6469

Arthur P. Murphy
James A. Toomey
Katherine A. Hesse
Michael C. Lehane
John P. Flynn
Regina Williams Tate
Edward F. Lenox, Jr.
Mary Ellen Sowyrda
David A. DeLuca
Ann M. O'Neill
Michael F.X. Dolan, Jr.
Donald L. Graham
Andrew J. Waugh
J. David Moran
Doris R. MacKenzie Ehrens
Mary L. Gallant
Robert M. Delahunt, Jr.
Lorna M. Hebert

Geoffrey P. Wermuth
Joseph T. Bartulis, Jr.
Clifford R. Rhodes, Jr.
Kathryn M. Murphy
Scott E. Bettencourt
Stacey G. Bloom
Michael R. Bertoncini
Rachel A. Israel
Kristin Bierly Magendantz
Adam D. Janoff
Thomas W. Colomb
Monica Swanson Tesler
David A. Appugliese
Jennifer N. Geosits
Bryan R. LeBlanc
Kimberly A. Mucha
Jason M. Gesing
Christina Gentile
Beth Leopold Ross

Of Counsel
Paul F. Dempsey
William P. Breen, Jr.

Scott Harshbarger

*Please Respond to Quincy*

August 24, 2004

Stephen J. Humes, Esq.
LeBoeuf, Lamb, Greene & MacRae
225 Asylum Street - 13
Hartford, CT 06103

    Re:    *Energy East Solutions, Inc./Town of Bedford, MA*
            *Demand and c.93A Claim*

Dear Mr. Humes:

    Reference is made to your August 20, 2004 letter to Richard T. Reed, Town Administrator of the Town of Bedford. Your proffer (or that of your client) to renew the Agreement between Energy East (as successor to Northeast Energy Partners) based upon conversion to an indexed price, is unacceptable to the Town, and a plain breach of your client's legal obligations.

    The prior agreement had the following term:

    *"From Buyer's August, 2001 meter read date through Buyer's*
    *August, 2004 meter read date."*

That Agreement was a fixed-price agreement with no provision for price renegotiation or adjustment either during its initial term or the renewal term. Under the provisions of that Agreement it automatically self-renewed, unless thirty (30) days prior to the expiration of the term notice on non-renewal was given by one party or the other. In fact, as you doubtless know,



EXHIBIT
3

**MURPHY, HESSE, TOOMEY & LEHANE, LLP**
<u>Attorneys At Law</u>

Stephen J. Humes, Esq.
August 24, 2004
Page Two

no such notice was given, and indeed your client has acknowledged to Bedford that Energy East had made a "huge mistake" by failing to give that notice.

   I consider it clear beyond dispute that the failure by your client to give timely notice of an intent not to renew the Agreement results in renewal of contract at the fixed price specified in the Agreement. It contains no provisions for renegotiation of the price or conversion of the pricing to an indexed or variable cost.

   Pursuant to the provisions of c.93A of the Massachusetts General Laws, a demand is made on behalf of the Town of Bedford that your client Energy East Solutions, Inc. agree to renew the said Agreement on the price basis set forth therein for a three year renewal term commencing on the meter read date in August, 2004 and expiring on the meter read date in August, 2007. This undertaking should immediately be reduced to writing by your client and sent to the Bedford Town Administrator, Richard T. Reed at the address specified in the Agreement. I would appreciate receiving a copy.

   If this request is not complied with promptly, the Town reserves all its rights under the original Agreement and the laws of Massachusetts, particularly and specifically under c.93A; this would entail, obviously a claim for triple damages under the statute.

              Very truly yours,

               Michael C. Lehane
               Town Counsel

MCL/emw

# LeBoeuf, Lamb, Greene & MacRae
### L.L.P.
A LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

| | | |
|---|---|---|
| EW YORK<br>'ASHINGTON, D.C.<br>LBANY<br>OSTON<br>ARRISBURG<br>ARTFORD<br>OUSTON<br>ACKSONVILLE<br>OS ANGELES<br>IEWARK<br>ITTSBURGH<br>IALT LAKE CITY<br>IAN FRANCISCO | GOODWIN SQUARE<br>225 ASYLUM STREET, 13TH FLOOR<br>HARTFORD, CT 06103<br>(860) 293-3500<br>FACSIMILE: (860) 293-3555<br><br>E-MAIL ADDRESS: STEPHEN.HUMES@LLGM.COM<br>WRITER'S DIRECT DIAL: (860) 293-3744<br>WRITER'S DIRECT FACSIMILE: (860) 241-1344 | LONDON<br>(A LONDON-BASED<br>MULTINATIONAL PARTNERSHIP)<br>PARIS<br>BRUSSELS<br>JOHANNESBURG<br>(PTY) LTD.<br>MOSCOW<br>RIYADH<br>(AFFILIATED OFFICE)<br>BISHKEK<br>ALMATY<br>BEIJING |

September 2, 2004

**VIA FACSIMILE AND CERTIFIED MAIL**

Michael C. Lehane, Esq.
Town Counsel
Murphy, Hesse, Toomey & Lehane, LLP
Crown Colony Plaza
300 Crown Colony Drive, Suite 410
P.O. Box 9126
Quincy, MA 02269-9126

Re: Energy East Solutions, Inc./Town of Bedford, MA

Dear Mr. Lehane:

We acknowledge receipt of your letter dated August 24, 2004. That correspondence on behalf of your client, the Town of Bedford, demands that Energy East Solutions, Inc. ("EES") renew a Natural Gas Agreement ("Agreement") according to terms you have proposed. Because your involvement with this Agreement is recent, we send this letter to explain the operative law and give you the opportunity now, before your client begins to incur costs associated with a meritless action, to withdraw your demand pursuant to c.93A of the Massachusetts General Laws.

Clearly, the Term of the Agreement was for three years. (Copy of the Agreement is attached) While the text of the paragraph titled "Term" lists the "Buyer's August 2001 meter read date" as the start of the Term, this cannot, as a matter of law, be the operative start of the written contract. First, your client did not sign and transmit a written copy of the Agreement to EES until September 20, 2001 and EES did not countersign the Agreement until December 20, 2001. Therefore, the earliest the written Agreement arguably could have been effective is September 20, 2001. Second, the "Buyer's August 2001 meter read date" could not have been the operative start date for the Agreement *because there was no service that actually commenced on any August 2001 meter read date.* There were service commencement dates that coincided

EXHIBIT 4

Michael C. Lehane, Esq.
September 2, 2004
Page 2

with meter read dates for meters on Town of Bedford property in June, July, and December, but none in August 2001. Clearly, therefore, notwithstanding the writing between the parties, there were other understandings that formed a part of the Agreement. Furthermore, your insistence that EES failed to give timely notice is unsupported and rather shocking given the applicable facts that include your own client's indication months ago to the EES agent that it had decided to pursue other supply options.

Among the facts that undercut your argument is that Jerry Hawkins, an independent contractor and agent of EES, contacted Marcia Pyles of the Town of Bedford as early as April 21, 2004 regarding the upcoming renewal. As is typical of independent agents of EES, Mr. Hawkins did not report his every move but was acting in good faith when he communicated with the Town of Bedford. Mr. Hawkins and Ms. Pyles interacted over the course of several months regarding potential renewal arrangements that included, among other topics, that market conditions had changed since the original Agreement was signed that would necessitate a change in price. Between April 2004 and August 2004, there were at least 11 conversations and correspondences between EES and the Town of Bedford regarding the upcoming potential renewal.

The Town of Bedford led Mr. Hawkins and EES to believe that it was actively seeking price quotes from other gas marketers and actively negotiating a new contract. It is a fantastic position that the Town of Bedford now believes it can force EES into accepting one-sided and commercially unreasonable terms in a situation that would not have developed absent Bedford's communications with Mr. Hawkins of The Energy Authority that the Town of Bedford was seeking alternative supply sources.

Even if the Agreement automatically renewed, a position that EES does not concede but will entertain here for the sake of discussion only, your legal position is incorrect under Massachusetts contract law and your reliance on Mass. Gen. Laws ch.93A is misplaced.

The assertion that the price of natural gas would renew at the original contract price is flawed. The Renewal provision in the original Agreement states the Agreement will be "renewed for a like term." The phrases "under like terms" or "at the same price terms" or similar variations do not appear. In fact, the written Agreement "Term" only refers to the operative time-period for the Agreement. As you will notice on further inspection of the Agreement, no other aspects of the Agreement are included in the Term. Thus, all that has renewed under your argument is the three-year Term, which is acceptable to EES assuming the parties can agree on price.

SEP-02-2004 03:18                                                                P.04/05

Michael C. Lehane, Esq.
September 2, 2004
Page 3

      We are sure that you are aware that Massachusetts has enacted the Uniform Commercial Code ("UCC"), as codified at Mass. Gen. Laws ch. 106, § 1-101 et seq. (2004). Article 2 of the UCC applies to sales of in goods. Natural gas is a "good" under the UCC[1]. Courts have uniformly held that the sale of natural gas is a sale of goods that falls within the perview of Article 2 of the UCC. "[T]he Uniform Commercial Code applies to natural gas sales as the sale of goods, U.C.C. § 2-107(1), and all states except Louisiana have adopted the UCC, variations between state law and general principles are likely to be few." Pennzoil Co. v. Federal Energy Regulatory Com., 645 F.2d 360, 387 (Former 5th Cir. 1981). See also, Amoco Production Co. v. Western Slope Gas Co., 754 F.2d 303 (10th Cir. 1985); Kansas Mun. Gas Agency v. Vesta Energy Co., 840 F. Supp. 814 (D. Kan. 1993); In re MSR Exploration, Ltd., 147 B.R. 560 (Bankr. D. Mont. 1992); Columbia Gas Transmission Corp. v. Larry H. Wright, Inc., 443 F. Supp. 14 (D. Ohio 1977); Roye Realty & Dev., Inc. v. Arkla, Inc., 1993 OK 99 (1993); New Bremen Corp. v. Columbia Gas Transmission Corp., 913 F. Supp. 985 (D. Tex. 1995).

      Since price is not addressed in the renewed Agreement, Massachusetts law applies the UCC provisions regarding gap filling. When there is a price gap, Mass. Gen. Laws ch. 106, § 2-305 directs courts to determine "a reasonable price." And, this price is to be determined "at the time of delivery." Therefore, EES has proposed an index price term that would adjust overtime based on fair market cost conditions for the next three year Term. Offering to renew the Agreement based on today's market conditions is reasonable. This formulation would be reasonable whether today's market cost was higher or lower than the original contract's price provision. If your client wishes to enter a new Agreement that fixes at today's prices deliveries over a three-year period instead of the index plus $3.11 offer, EES would entertain such a proposal and be glad to provide a fixed price quote. Regardless of the reasonable price available to your client under ch. 106, § 2-305, there is simply no legal or factual authority for your argument that the contract has automatically renewed for another three years at $5.65 per dekatherm.

      Additionally, EES is providing your client the opportunity to withdraw its demand based on an alleged unfair trade practice, ch. 93A. Even if your client insists on pursuing any such action against EES, despite the clear legal principles in EES's favor, a simple action over the terms of a contract cannot be transformed into a ch. 93A action despite the allure of triple damages. "[A] good faith dispute as to whether money is owed, or performance of some kind is

---

[1] "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (section 2-107). Mass. Gen. Laws ch. 106, § 2-105.

    UCC § 2-107(1) and (2) was amended in 1972 to read as follows:
"(1) A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this Article if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

4 A.L.R.4th 912, 2.

Michael C. Lehane, Esq.
September 2, 2004
Page 4

due, is not the stuff of which a ch. 93A claim is made." Duclersaint v. Fed. Nat'l. Mortgage Assoc., 427 Mass. 809, 814 (1998) (finding that an ordinary dispute regarding money owed on a sale without unethical or oppressive conduct is not a ch. 93A action). See also, Cantell v. Hill Holliday Connors Cosmopulos, Inc., 53 Mass. App. Ct. 550, 556 (2002) (finding that ch. 93A claims derivative of breach of contract actions are properly dismissed).

EES has made a fair and commercially reasonable offer to your client based on the fair market rate for natural gas. (See letter to Town of Bedford dated August 20, 2004) The Town of Bedford had the opportunity to arrange service through another natural gas marketer or through the LDC if it wished not to renew the Agreement for another term of three years.[2] As stated above, the necessity for a change in price structure between the original Agreement and any ongoing arrangement between the parties clearly was part of the multiple interactions between agents for EES and the Town of Bedford from April through August 2004. Since EES has acted within the bounds of proper business conduct there can be no ch. 93A action here based on a tenuous breach of contract claim.

Since your letter of August 24, 2004 serves as the writing that formally rejects EES's renewal offer, and since the Agreement has therefore ended, EES intends to notify KeySpan (the local distribution company providing natural gas service to the Town of Bedford) on or before September 12, 2004 that the Town of Bedford meters are being returned to KeySpan for sales service pursuant to utility tariff rates (or whatever alternative service the Town of Bedford selects). The transfers will occur effective the next meter read dates after September 12, 2004. In the event that the Town of Bedford prefers to renew the Agreement for another three-year term at either the index price offer or a fixed price, please notify me immediately so that the necessary arrangements can be made to avoid a return to utility sales service.

We sincerely hope that, upon reflection, you and your client will decide to pursue negotiation instead of litigation to resolve this commercial misunderstanding.

Very truly yours,

Stephen J. Humes

---

[2] We will save for another day to articulate, if necessary, the evidence we have uncovered (which your client may not have shared with you) that suggests that the Town of Bedford breached the implied covenant of good faith and fair dealing in this matter through its dealings with the EES agent and one or more third-parties for alternative natural gas supplies.