UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TOWN OF BEDFORD | : | |
| Plaintiff | : | CASE NO. 05-10214JCT |
| v. | : | |
| ENERGY EAST SOLUTIONS, INC. | : | |
| Defendant | : | |

**DEFENDANT ENERGY EAST SOLUTIONS, INC.'S CONCISE STATEMENT OF MATERIAL FACTS IN RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Defendant Energy East Solutions, Inc. ("Energy East"), submits, along with its Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Energy East's Memo. of Law") the following concise statement of material facts.

1. In 2001, Plaintiff Town of Bedford entered into a three-year contract with North East Energy Partners, L.L.C. for the purchase and sale of natural gas services (the "Contract"). North East Energy subsequently assigned the Contract to Energy East. See Letter of June 10, 2002 from John Hardy, North East Energy Partners, L.L.C. to R. Reed, Town of Bedford, attached to Energy East's Memo. of Law as Exhibit 1.[1]

2. The Contract provides under the section headed "TERM", that it would run "From Buyer's August 2001 meter read date through Buyer's August 2004 meter read date." Contract p. at 2, attached to Energy East's Memo. of Law as Exhibit 2. Although the Contract stated that it would begin with "Buyer's August 2001 meter read date", the Contract was not executed until September 20, 2001. See id. at 3; see also Affidavit of

---

[1] All exhibits to Energy East's Memo. of Law are fully incorporated herein by reference.

Jerry Hawkins ("Hawkins Aff.") ¶ 14, attached to Energy East's Memo. of Law as Exhibit 3. Therefore, Bedford actually started receiving gas from North East Energy Partners after September 20, 2001. See Hawkins Aff. ¶ 14, Exhibit 3. Deposition Transcript of Town of Bedford's Marcia Pyles ("Pyles Tr.") at 31-32, attached to Energy East's Memo. of Law as Exhibit 4.

3. To extend for the full three-year term, the Contract would actually run from a date after September 20, 2001 to a date after September 20, 2004. In addition, although the Contract refers to a single "meter read date," the fact is that Bedford had twelve different properties being served, each with its own meter read date. Pyles Tr. At 6, Exhibit 4.

4. Separately, under the section headed "PRICE", the Contract provided two price options: one for a "Fixed Price" and one for an "Indexed Price." Back in 2001, Bedford and North East Energy Partners had agreed to the "Fixed Price" option for the 2001-2004 Term. See Contract. In 2001, the price was 5.65¢ /DKT. Pyles Tr. at 17, 35, Exhibit 4. That price stayed in effect for three years even though the market price of gas had increased dramatically over those three years. By 2004, the price of gas in the market was almost double the 2001 Contract price. See Pyles Tr. at 63-64, Exhibit 4.[2] The current price is 17¢ /DKT. Pyles Tr. at 54, Exhibit 4.

5. In April of 2004, at the instruction of her supervisor at the Town of Bedford, Marcia Pyles contacted Energy East to find out Energy East's pricing going forward. See Pyles Tr. at 55, Exhibit 4. She then spoke with Jerry Hawkins, an independent energy consultant acting on behalf of Energy East regarding the upcoming Contract termination. See Hawkins Aff. ¶ 4, Exhibit 3; see also Pyles Tr. at 9-10, Exhibit 4.

---

[2] In her deposition testimony, Marcia Pyles testified that Jerry Hawkins had provided her in 2004 with quotes of 92¢ and 96¢ per dekatherm. Pyles Tr. 63-64. We assume that the actual quotes were 9.2¢ and 9.6¢ per dekatherm.

2

6. In April of 2004, Hawkins told Pyles that the Contract would terminate, but that Energy East would be willing to renew with a new Indexed Price quote. Hawkins Aff. ¶ 8, Exhibit 3.

7. On April 28, 2004, on Ms. Pyles sent Hawkins a facsimile stating, "Can you please give us a price for one year with the option of an annual extension for a max of 3 years total?" Pyles Tr., Exhibit 4, attached as Exhibit 4 thereto. Hawkins later responded, "Please verify which accts that you want on the new contract. . . ." Pyles Tr., Exhibit 4, attached as Exhibit 5 thereto.

8. While Pyles denies ever having seen an Indexed Price and does not recall discussing an Indexed Price, Pyles did recall having had extended discussions with Hawkins about trying to get a better price. See Pyles Tr. at 14-15, 27, 43, 50, Exhibit 4. Pyles rejected the Energy East price quote as too high and asked Hawkins to look into other suppliers on behalf of Bedford. See Pyles Tr. at 43, Exhibit 4.

9. After months of discussions with Hawkins wherein Pyles was having Hawkins look for better prices than those offered by Energy East, Bedford suddenly told Energy East on August 16, 2004 that Energy East now had to renew for three more years at the 2001 price because Energy East had not sent formal written notice of non-renewal. See Pyles Tr. at 69-70, Exhibit 4. After that conversation, by a letter dated August 20, 2004, Energy East gave formal written notice of non-renewal. See Letter from S. Humes to R. Reed dated August 20, 2004, attached to Energy East's Memo. of Law as Exhibit 6. Energy East supplied gas to Bedford through and including September 22, 2004. Aff. of Teresa Bradford, attached to Energy East's Memo. of Law as Exhibit 5.

10. Although not referenced in the Contract, purported to be part of the Contract was an unsigned separate form of Terms and Conditions which provided that, "[u]nless either party otherwise notifies the other in writing at least thirty (30) days prior to the expiration of the original term or any subsequently agreed upon term, then this Agreement shall be automatically renewed for a like <u>term</u>." ("Renewal Provision") Terms and Conditions § 7 (emphasis added), attached as Exhibit 7 to Energy East's Memo. of Law.

11. By custom and usage, automatic renewal provisions typically are extended to give a customer an additional thirty (30) days of service upon a contract's expiration.

Under these facts, at this early stage in discovery, the following issues of fact, without limitation, require that the Court deny the Motion.

    1.    There exists a genuine issue of material fact as to whether, assuming arguendo, that the Contract required notice of termination, Plaintiff had actual notice of such termination. Energy East's Memo. of Law, p. 5-7.

    2.    There exists a genuine issue of material fact as to whether, in 2004, both the term and the price would renew, or just the term, where the original Contract price was set in 2001, where the Contract contains separate clauses for term and price, and where there are multiple pricing options under the price term provision. Energy East's Memo. of Law, p. 7-8.

    3.    There exists a genuine issue of material fact as to the exact termination date of the Contract in light of the several different meter read dates that vary from building to building and the ambiguity of whether a meter read date reflects a date when a meter is read or a date when consumption would be known. Energy East's Memo. of Law, p. 9.

4. While Energy East believes ultimately that judgment will enter in its favor because the Contract actually ran through September 20, 2004 (and consistent with the affidavit of Teresa Bradford and the attached invoices, Energy East supplied gas to Bedford including the month of September, 2004), at a minimum, there exists a genuine issue of material fact at this stage of this proceeding as to when the Contract terminated. Energy East's Memo. of Law, p. 10.

5. There exists a genuine issue of material fact as to the length of the purported renewal of the Contract.

6. There exists a genuine issue of material fact, and there is a need for additional discovery, as to why Plaintiff was seeking pricing information from Energy East, where Ms. Pyles testified that she had no idea why her supervisor had asked Energy East for such information.

RESPECTFULLY SUBMITTED,

**ENERGY EAST SOLUTIONS, INC.**

By: _____
Thomas G. Rohback, admitted pro hac vice
James J. Reardon, Jr. (BBO #566161)
LeBoeuf, Lamb, Greene & MacRae, L.L.P.
Goodwin Square
225 Asylum St.; 13th Floor
Hartford, CT 06103
(860)293-3500
(860)293-3555 (facsimile)

5